UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PEDRO FIGUEROA, : |  |
|     Plaintiff, : |  |
| : |  |
| v. : | Case No. 3:16-cv-120 (VAB) |
| : |  |
| CORRECTIONAL MANAGED HEALTH, : |  |
| CARE, ET AL., : |  |
|     Defendants. : |  |

### INITIAL REVIEW ORDER

Plaintiff, Pedro Figueroa, is incarcerated at Osborn Correctional Institution ("Osborn"). He names Dr. Wu, Medical Director Richard Furey, Commissioner Semple and Correctional Managed Health Care as Defendants. For the reasons set forth below, the Complaint will be DISMISSED.

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of

action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

Mr. Figueroa states that he underwent surgery to replace his right knee at the University of Connecticut Health Center on November 12, 2014.  The discharge instructions allegedly included an order that Mr. Figueroa work with the services provided at Osborn to "encourage range of motion and ambulation" but did not include an order for pain medication.  Compl., ECF No. 1 at 11.  At some point, Medical Director Richard Furey allegedly informed Mr. Figueroa that physical therapy was not available at Osborn.

During a follow-up appointment on November 28, 2014, an orthopedist allegedly noted that Mr. Figueroa was progressing well and his fever was gone, but that he suffered from effusion, an accumulation of fluid in the right knee.  On December 26, 2014, an orthopedist allegedly noted that Mr. Figueroa was improving and did not have a fever or drainage from the incision, but was having difficulty engaging in therapy due to poor pain control.  The orthopedist allegedly prescribed medication for pain and inflammation, recommended that Mr. Figueroa engage in physical therapy exercises, and suggested that Mr. Figueroa return to the clinic for an appointment in two to three months.

On March 11, 2015, an orthopedist allegedly examined Mr. Figueroa's knee.  During the examination, Mr. Figueroa states he informed the orthopedist that he had not been provided with physical therapy at Osborn.  The orthopedist allegedly noted that the plaintiff was experiencing

pain and that his range of motion had not improved. According to Mr. Figueroa, the orthopedist suspected that inflammation in Mr. Figueroa's knee was the cause of his limited range of motion and pain.

The orthopedist allegedly prescribed an anti-inflammatory and recommended that Mr. Figueroa engage in physical therapy to increase strength and improve his range of motion and to continue stretching exercises on his own. He allegedly suggested that Mr. Figueroa follow up with staff at Osborn.

On May 15, 2015, an orthopedist allegedly examined Mr. Figueroa's knee and noted that his pain was gone, but that he was still experiencing some decreased range of motion. The orthopedist allegedly showed Mr. Figueroa how to work on improving strength and range of movement on his own, but also recommended that he engage in formal physical therapy to improve strength and range of movement.

On August 13, 2015, Mr. Figueroa claims he filed a grievance complaining that he was not receiving physical therapy to assist in his recovery from knee surgery. The reviewer allegedly directed Mr. Figueroa to sign up for sick call if he was having issues with his knee.

Also, on August 13, 2015, Mr. Figueroa claims that he filed a request seeking access to formal physical therapy. On October 1, 2015, Richard Furey allegedly responded to Mr. Figueroa's request for accommodation and indicated that he had reviewed the report of the orthopedist from May 15, 2015, but did not see an order for formal physical therapy.

On November 13, 2015, Mr. Figueroa claims that he participated in a videoconference with an orthopedist. Mr. Figueroa also states that, at some point, he filed a habeas petition in state court seeking an order that he be provided with physical therapy. Mr. Figueroa alleges that,

3

because of the orthopedist's recommendation for formal physical therapy, the Utilization Review Committee scheduled an appointment for Mr. Figueroa to be seen by a physical therapist.

On December 3, 2015, a physical therapist allegedly examined Mr. Figueroa at the University of Connecticut Health Center and showed him how to perform exercises to improve range of motion and flexion.  Mr. Figueroa also alleges that she provided him with a written home exercise program and recommended that he continue to use a cane for six weeks.  The physical therapist allegedly suggested that Mr. Figueroa follow-up with facility staff.

Mr. Figueroa states that the Defendants failed to provide him with physical therapy at Osborn following his knee surgery.   He alleges that he experienced pain, discomfort, anxiety, inflammation and loss of sleep as a result of the lack of physical therapy and poor pain management.

**I.      Official Capacity Claims**

Mr. Figueroa seeks injunctive relief and monetary damages.  To the extent that he seeks damages against Defendants in their official capacities, the claims are barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).  All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**II.     Correctional Managed Health Care**

Mr. Figueroa names Correctional Managed Health Care as a Defendant.  He claims that the Department of Correction has contracted with the University of Connecticut Health Center to provide medical care to inmates through Correctional Managed Health Care.  Mr. Figueroa states that the contract includes a provision that the Department of Correction will pay for any civil damages awarded to an inmate.  He contends that this provision of the contract improperly

4

releases Correctional Managed Health Care and the University of Connecticut Health Center from any wrongdoing and encourages lack of care for inmates.

To state a claim under section 1983, Mr. Figueroa must allege facts showing that the defendant, a person acting under color of state law, deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). A state agency is not a "person" within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

The Department of Correction and the University of Connecticut Health Center are state agencies. *See Jolley v. Correctional Managed Health Care,* Case No. 3:04-cv-1582 (RNC), 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009), *aff'd,* 375 F. App'x 67 (2d Cir. 2010) (explaining that Correctional Managed Health Care "is a division of a state agency, the University of Connecticut Health Center"); *see also Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008); *Garris v. Department of Correction*, 170 F. Supp. 2d 182, 186 (D. Conn. 2001). Because it is a division of a state agency, Correctional Managed Health Care is not a "person" within the meaning of section 1983. *See Jolley*, 2009 WL 233667, at *3 (dismissing claims against Correctional Managed Health Care because it is not person within the meaning of section 1983)(citation omitted). Accordingly, the claims against Correctional Managed Health

Care, including the contract claim, are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).[1]

### III.     Defendants Wu and Semple

Mr. Figueroa alleges that Dr. Wu is assigned to Correctional Managed Health Care to provide medical services to inmates. Mr. Figueroa states that "[t]he direction not to have physical therapy (formal and/or informally) can be in writing or orally under the direction of Dr. Wu." Compl., ECF No. 1 at 3. Mr. Figueroa does not allege that Dr. Wu was aware of or involved in his treatment following his knee surgery, and he does not otherwise mention Dr. Wu in the body of the complaint. Mr. Figueroa lists Commissioner of Correction Scott Semple in the caption of the complaint, but does not otherwise mention him in the body of the complaint.

The Court concludes that Mr. Figueroa has not asserted facts to suggest that either Dr. Wu or Commissioner Semple were deliberately indifferent to his medical needs or otherwise violated his federally or constitutionally protected rights. In order to be held liable for damages under section 1983, an individual must be personally involved in the alleged constitutional deprivation. *See Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 413 (E.D.N.Y. 2013) ("An individual officer's personal involvement in the 'constitutional deprivation[ ]' is a 'prerequisite' to a Section 1983 claim against them." (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977))). Mr. Figueroa has failed to provide the Court with any factual basis to conclude that

---

[1] The plaintiff does not name the Department of Correction or the University of Connecticut Health Center as defendants. Even if he had named those entities as defendants, they would not be subject to suit because they are not persons within the meaning of 42 U.S.C. § 1983. *See Gaby v. Board of Trustees of Community Technical Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of trustees are not persons within the meaning of section 1983); *Walker v. State of Connecticut*, No. 06-cv-165 (SRU), 2006 WL 1981783, at *2 (D. Conn. Mar. 15, 2006) ("Like other state agencies, the University of Connecticut Health Center is not a person within the meaning of section 1983") (citations omitted); *Santos v. Dep't of Corr.*, 3:04-cv-1562 (JCH)(HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (observing that "[n]either a Department of Correction nor a correctional institution is a person" subject to liability under section 1983).

these Defendants were personally involved in his alleged harms.  Accordingly, all claims against Defendants Wu and Semple are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**IV.   Defendant Furey**

Mr. Figueroa describes Richard Furey as the medical director at Osborn.  Mr. Figueroa claims that after he underwent knee surgery, Richard Furey informed him that formal physical therapy was not available at Osborn.  When Mr. Figueroa submitted a request for access to formal physical therapy in August 2015, Richard Furey, as Health Services Administrator, reviewed an orthopedist's report from May 2015.  *See* Compl., ECF No. 1 at 20.  Richard Furey noted that the orthopedist had instructed Mr. Figueroa on how to do range of motion exercises, but had not issued an order for formal physical therapy.  *See id.*

The report of the orthopedist from May 15, 2015 is attached to the complaint.  Compl., ECF No. 1 at 17.  It includes a recommendation for formal physical therapy to increase range of motion and strength, but it also includes a notation that there is "[n]o formal physical therapy in jail."  *Id.*  The Recommendations section of the consultation form also states that "THERAPEUTIC PROCEDURES MUST BE PRECERTIFIED AND SCHEDULED BY CMHC UR [Correctional Managed Health Care Utilization Review Committee]."  *Id.*  The form clearly indicates that any recommended treatment must be approved by the Utilization Review Committee.  Thus, although there was a recommendation for physical therapy in the orthopedist's report, there was no formal order that physical therapy be scheduled until December 3, 2015, when Utilization Review Committee approved the request seeking an examination of Mr. Figueroa by a physical therapist.  Mr. Figueroa acknowledges that on

December 3, 2015, a physical therapist examined him, instructed him on how to do various exercises and provided him with written exercises to perform at Osborn.

Thus, Richard Furey's response on October 1, 2015, indicating that the orthopedist had not ordered physical therapy for Mr. Figueroa's knee was not inaccurate. At that time, there was a recommendation for therapy, but no approved order for physical therapy. *See Wortham v. Plourde*, Case No. 3:12-cv-1515(DJS), 2014 WL 4388560, at *2-3 (D. Conn. Sept. 5, 2014) (noting that recommendation for physical therapy made by surgeon during post-operative consultation "must be approved by the Utilization Review Committee" and "was not a prescribed treatment required to be followed by medical staff at the correctional facility").

To state a claim for deliberate indifference to a serious medical need, Mr. Figueroa must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). Mr. Figueroa's alleged need for physical therapy may be sufficient to meet the first prong. *See Stevens v. Goord*, 535 F. Supp. 2d 373 (S.D.N.Y. 2008) (finding that prisoner's need for physical therapy to treat underlying muscular dystrophy was "sufficiently serious" for purposes of deliberate indifference claim); *Benjamin v. Galeno*, 415 F. Supp. 2d 254, 259 (S.D.N.Y. 2005), *aff'd sub nom. Benjamin v. Koeningsmann*, 204 F. App'x 979 (2d Cir. 2006) (finding fact issue regarding whether rotator cuff injury constituted a "serious medical need" for first prong of deliberate indifference claim where plaintiff alleged that injury resulted in "extreme pain"). However, the facts alleged here do not satisfy the second prong of the analysis as required to state a claim against Defendant Furey. *Id.* at 260 (requiring plaintiffs

to demonstrate "intentional wrong doing or a total lack of concern on the part of defendants with plaintiff's well being" in order to prevail on deliberate indifference claim).

Mr. Figueroa mentions that he did not receive "proper medication" and experienced "poor pain management." Compl., ECF No. 1 at 8.  However, he does not otherwise elaborate on these statements, nor does he assert any facts to suggest that Richard Furey or any other Defendant was involved in the decisions to prescribe or not to prescribe medications for him following his knee surgery.  Mr. Figueroa has not attached any grievances or requests in which he complained about medication issues.  Thus, the Court concludes that the allegations against Richard Furey do not state a claim of deliberate indifference to medical needs.  The claims against Richard Furey are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## V.    Americans with Disabilities Act

Mr. Figueroa claims to bring this civil action to remedy rights guaranteed by the Americans with Disabilities Act ("ADA") as well as the Eighth and Fourteenth Amendments. To state a claim under Title II of the ADA, 42 U.S.C. § 12101, et seq., Mr. Figueroa must plead "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusions or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003).  Most importantly, Mr. Figueroa must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability.  *See Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. Of Brooklyn*, 380 F.3d 98, 112 (2d Cir. 2001)).  "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do

not allege that the inmate was treated differently because of his or her disability." *Id.* at 595 (collecting cases).

Mr. Figueroa claims that he underwent knee replacement surgery and that Defendants did not provide him with physical therapy in a timely manner. Mr. Figueroa does not allege that Defendants excluded him from or denied him the benefits of any services, programs or activities because of his knee surgery or his condition following the surgery. Rather, he asserts that his disability/condition was not adequately treated. Furthermore, there are no facts to suggest that the lack of access to formal physical therapy was the result of ill will or discriminatory intent on the part of any Defendant. *See Garcia*, 380 F.3d at 112-113 (affirming dismissal of ADA claim where plaintiff failed to "allege discriminatory animus or ill will based on his purported disability"); *Elbert,* 751 F.Supp.2d at 596 (dismissing ADA claim where allegations suggested that prisoner "was not properly treated *for* his [condition], not that he was mistreated *because* of his [condition]"). Because Mr. Figueroa does not allege that Defendants denied him treatment or participation in various programs or activities because of his knee surgery or his condition following the surgery, he fails to state a claim under the ADA. Those claims are dismissed as to all Defendants. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The Court enters the following orders:

**(1)** The claims against all Defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2). All other claims against the Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Court declines to exercise supplemental jurisdiction over any state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966) (holding that,

where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006).

**(2)**     The Clerk of the Court is directed to enter judgment for the Defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 23rd day of December, 2016.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE